Hillsborough
No. 83-329

BANKEAST CORPORATION

v.

RITA D. GALDI & a.

July 27, 1984

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*James R. Muirhead* and *Richard A. Samuels* on the brief, and *Mr. Muirhead* orally), for the plaintiff.

*Orr & Reno P.A.*, of Concord (*William L. Chapman* on the brief and orally), for the defendants.

DOUGLAS, J. The Superior Court (*Wyman*, J.) transferred five questions without ruling to this court pursuant to RSA 491:17 and Supreme Court Rule 8. The issues presented in the transferred questions concern the rights and liabilities of dissenting stockholders and corporations under the stock appraisal statute. RSA 294:76–:80 (repealed February 1, 1982, and replaced by RSA 293-A: 81–:82 (Supp. 1983)). We answer questions one and two in the negative and question three in the affirmative.

The defendants owned (of record and/or beneficially) stock in BankEast Corporation in 1981 when the proposed merger with another bank was announced. Subsequent to this announcement, the defendants acquired additional BankEast stock. In January 1982, the proposed merger was considered and approved by the BankEast stockholders in accordance with RSA 294:42. The defendants voted against the merger and thereafter perfected their right to statutory appraisal. RSA 294:42, VI, :76.

The parties were unable to agree upon the value of the stock, and the defendants demanded an appraisal of *all* of their stock. RSA 294:76–:80. In accordance with RSA 294:77, the parties each appointed an appraiser, who in turn appointed a third appraiser. The appraisers met and *unanimously* determined the value of the stock as of the date of the merger.

Following the decision of the appraisers, the plaintiff offered to pay the defendants the appraised price for the stock. The defendants decided to withdraw from the appraisal process and so notified the plaintiff. The plaintiff then tendered payment for the stock to the defendants at the appraised price. The defendants refused payment, and the plaintiff instituted this action to compel the defendants to transfer the stock and to enjoin them from otherwise disposing of the stock. A preliminary injunction was granted pertaining only to the stock acquired prior to the merger announcement.

The court then transferred without ruling five questions of law to this court. We need only address the first three transferred questions:

"1. May a dissenting shareholder who made demand for payment of the fair value of his stock under RSA 294:42 and 76–80, withdraw all his shares from the statutory

appraisal process following a decision by the appraisers, appointed in accordance with the statute, of the fair value of said shares, and following a demand for transfer of the shares and offer of payment for the shares, but before tender of payment by the corporation?

2. If the answer to question 1 is negative, may the dissenting shareholder withdraw, without any liability to the corporation, those shares purchased after receiving notice of the corporate action from which he subsequently dissented?

3. If the answer to questions 1 and 2 are negative, is the corporation entitled, as a matter of law, to an order compelling the shareholder to transfer all his shares?"

The defendants argue that they should be allowed to withdraw from the appraisal process after the appraisers have arrived at their decision. In the alternative, they argue that they should be permitted to withdraw from the appraisal process the stock that was acquired after the announcement of the proposed merger. The defendants have not cited the decision of a single court in support of their position, and our research fails to reveal any such case.

In support of their position, the defendants refer to several law review articles to illustrate that appraisal is an inadequate remedy. *See* Comment, *Valuation of Dissenters' Stock Under Appraisal Statutes*, 79 HARV. L. REV. 1453, 1453 n.1 (1966) ("The appraisal right has been justifiably criticized on a number of other grounds. Difficult technical procedures limit its usefulness . . . . Dissenters are subject to income tax at capital gains rates . . . ."); *see also* Vorenberg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right*, 77 HARV. L. REV. 1189, 1201 (1964) ("[A]ppraisal will, even under the best of the statutory procedures, often give the stockholder less than his stock is worth.").

While these and other commentators have criticized the appraisal process, they do not even remotely suggest that an option to withdraw from the process, after the appraisers' decision, would be justified or would rectify the problems. In addition, the defendants' argument that the appraisal process is unfair and inadequate as a remedy would be more properly addressed to the legislature than to this court.

The legislature enacted a comprehensive statutory scheme to provide an equitable remedy when stockholders object to specified corporate actions. RSA 294:76 provided:

"A stockholder in any business corporation which shall have duly voted to sell, lease, or exchange all its property

and assets for anything except money, or to change the nature of its business in accordance with the provisions of RSA 294:40 and 41, who at the meeting of stockholders has voted against such action may, within 30 days after the date of said meeting, make a demand in writing upon the corporation for payment to him for his stock at its fair value."

The defendants complied with RSA 294:76 and elected to demand payment from the corporation for the fair value of their stock. The defendants and the plaintiff were unable to agree on the value of the stock and, thus, three appraisers were appointed in accordance with RSA 294:77:

"If the corporation and the stockholder cannot agree upon the value of the stock at the date of such sale, lease, exchange, or change, such value shall be ascertained by 3 disinterested persons, one of whom shall be named by the stockholder, another by the corporation, and the third by the 2 thus chosen."

The appraisers met, considered evidence pertaining to the value of the stock, and reached a unanimous decision. The defendants' own appraiser participated in this decision, and there has not been any allegation of fraud or other illegality.

The effect of the decision of the appraisers is provided for in RSA 294:78:

"The finding of the appraisers *shall be final*, and if their award is not paid by the corporation within 30 days after it is made it may be recovered by the stockholder from the corporation in an action of assumpsit."

(Emphasis added.) The defendants argue that the word "final" as used in the statute only means that the appraisers have completed their work and that their finding may not be contested, not that the defendants are precluded from withdrawing from the appraisal process. We do not agree and, for the reasons set forth below, hold that the defendants may not withdraw any of the stock from the appraisal process.

The plain meaning of the language in the statutory scheme precludes withdrawal from the appraisal process following the appraisers' decision. RSA 294:78 states that the decision of the appraisers "shall be final," and RSA 294:79 states that the "stockholder shall forthwith transfer" the stock to the corporation upon receipt of the appraised price for the stock. Read together, the lan-

guage of these two sections evinces a mandatory statutory scheme which is to be followed, and it does not include a provision for withdrawal from the process.

The Massachusetts case cited by defendants, in which a similar statute was construed to permit judicial review of the appraisers' finding, is not helpful to the defendants. In *Cole v. Wells*, 224 Mass. 504, 513, 113 N.E. 189, 192 (1916), the Supreme Judicial Court held that judicial review of the appraisers' decision was permissible when there were allegations of fraud and misappropriation. *But see Gordon v. Public Service Co.*, 101 N.H. 372, 376, 143 A.2d 428, 431 (1958). Since there have been no allegations of fraud in the instant case, we need not reconsider the holding of *Gordon v. Public Service Co. id.*

In construing similar statutes the courts of several other jurisdictions have held that withdrawal from the appraisal process is not permitted. In *Bauman v. Advance Aluminum Castings Corp.*, 27 Ill. App. 2d 178, 184, 169 N.E.2d 382, 385 (1960), the court stated that "he is bound to carry his suit through to a legal conclusion and he can not dismiss his suit and resume his status as a stockholder." *See Root v. York Corporation*, 28 Del. Ch. 203, 211, 39 A.2d 780, 783 (1944); *Martignette v. Sagamore Mfg. Co.*, 340 Mass. 136, 138, 163 N.E.2d 9, 11 (1959); *Johnson v. Baldwin*, 221 S.C. 141, 156, 69 S.E.2d 585, 592 (1952).

The few commentators that have addressed this issue are in agreement with the position that the dissenting stockholders may not withdraw from the appraisal process following the decision of the appraisers. "Once the stockholder has made demand for payment for his stock, at least in the absence of fraud, he has probably irrevocably committed himself to that remedy and can not thereafter change his mind, at least without the consent of the corporation." Looney, *Dissenting Minority Stockholder's Right of Appraisal*, 4 B.C. INDUS. & COM. L. REV. 85, 96 (1962); *see id.* at 96 n.37 ("Rhode Island [was] the only Uniform Commercial Code state expressly providing that the stockholder may withdraw his demand at any time prior to the appraiser's report."); *see also* 6 Z. CAVITCH, BUSINESS ORGANIZATIONS § 112.03[3] (1976) ("Generally, a dissenting shareholder may not revoke his demand for payment without first securing the consent of the corporation or the board of directors.").

The defendants have voluntarily elected this statutory remedy and as a result have caused the plaintiff substantial expenses and hardship. Public policy alone, premised on a sense of fair play and mutuality of obligations, would require dissenting stockholders to be bound to their elected remedy following the deci-

sion of the appraisers. If dissenting stockholders were permitted to withdraw from the appraisal process following the decision of the appraisers, corporate uncertainty and the opportunity for stock manipulation would result. *See Johnson v. Baldwin*, 221 S.C. at 156, 69 S.E.2d at 592 ("[T]o hold otherwise would lead to great uncertainty and much confusion.").

■ The defendants' argument that there is not a binding contract until the dissenting stockholders have accepted payment for their stock is also without merit. RSA 294:78 provides that if the corporation fails to pay the appraisers' award within thirty days, the stockholder may recover the award in "an action of assumpsit." This provision clearly indicates the legislative intention to create an enforceable contract following the decision of the appraisers. The stockholders were provided with a remedy at law, RSA 294:78, and the corporation with an equitable remedy, RSA 294:79, for breaches of the contract.

■ In electing this statutory remedy the dissenters have, in effect, offered to sell their stock to the corporation at the price to be set by the appraisers. The legislature has accepted this offer for the corporation by requiring its participation in the appraisal process. RSA 294:76–:78. The only step remaining after the appraisers have reached a decision is the performance of the contract, and the remedies for failure to do so are clearly provided for by statute. RSA 294:78, :79.

The defendants argue in the alternative that the portion of their stock acquired after the announcement of the proposed merger should be exempted from the appraisal process. "A shareholder who acquired his share after the plans for the merger became public was not entitled to appraisal since he did not have the characteristics of a bona fide purchaser; to hold otherwise would allow the corporation to be subject to harassment." Note, *The Dissenting Shareholders' Appraisal Statute: Influence of Cost and Interest Provisions Upon the Efficacy of the Remedy*, 50 B.U. L. REV. 57, 58 (1970) (citing *Dynamics Corp. of America v. Abraham & Co.*, 4 Misc. 2d 50, 152 N.Y.S.2d 807 (Sup. Ct.), *modified*, 1 App. Div. 2d 1005, 153 N.Y.S.2d 533, *appeal denied*, 2 App. Div. 2d 673, 153 N.Y.S.2d 554 (1956)).

The decision of the New York court is not of assistance to the defendants because in that case the corporation was the party seeking to have the after-acquired stocks excluded from the appraisal process. *Dynamics Corp. of America v. Abraham & Co. supra.* In this case, however, it is the dissenting stockholders who are attempting to have the after-acquired stocks excluded from the appraisal process. Accordingly, we need not decide whether this corporation

could have had the defendants' after-acquired stock excluded from the appraisal process, nor do we need decide whether the defendants could have withdrawn any of that stock from the appraisal process *prior* to the appraisers' decision.

The defendants voluntarily elected to subject *all* of their stock to the appraisal process and made no attempt to withdraw any of it from the process prior to the appraisers' decision. The defendants elected their remedy and are now bound by its terms. *Cf. Gordon v. Public Service Co.*, 101 N.H. 372, 376, 143 A.2d 428, 431 (1958) ("[T]he statutory remedy of a dissenting utility stockholder was exclusive.").

Accordingly, transferred questions one and two are answered in the negative.

Transferred question number three, whether the corporation is entitled to an order compelling the defendants to transfer all of the stock to the corporation, is answered in the affirmative. RSA 294:79 provides that the "stockholder shall forthwith transfer" the stock to the corporation upon payment by the corporation of the appraisal award price. This statutory language clearly evinces a legislative intent to confer on the corporation the equitable remedy of specific performance. In addition, the corporation does not have an adequate remedy at law because the stock is of limited quantity and, thus, unique. *See Gordon v. Public Service Co. supra.*

*Remanded.*

KING, C.J., did not sit; the others concurred.