Lillian S. RAUCH, Plaintiff–Appellant,

v.

RCA CORPORATION, General Electric Company and Gesub, Inc., Defendants–Appellees.

No. 124, Docket 87–7424.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1987.

Decided Nov. 3, 1988.

Richard M. Meyer, New York City (Steven G. Schulman, Milberg Weiss Bershad Specthrie & Lerach, New York City, of counsel), for plaintiff-appellant.

Pamela Jarvis, New York City (Marc P. Cherno, Irwin Blum, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for defendants-appellees.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff Lillian S. Rauch appeals from a judgment of the United States District Court for the Southern District of New York, John F. Keenan, *Judge,* dismissing her class action complaint challenging the propriety of a merger effected by defendants for failure to state a claim upon which relief can be granted. The district court held that Rauch's action was barred by Delaware's doctrine of independent legal significance. We affirm.

### Background

This case arises from the acquisition of RCA Corporation ("RCA") by General Electric Company ("GE"). On or about December 11, 1985, RCA, GE and Gesub, Inc. ("Gesub"), a wholly owned Delaware subsidiary of GE, entered into an agreement of merger. Pursuant to the terms of the agreement, all common and preferred shares of RCA stock (with one exception) were converted to cash, Gesub was then merged into RCA, and the common stock of Gesub was converted into common stock of RCA. Specifically, the merger agreement provided (subject in each case to the exercise of appraisal rights) that each share of RCA common stock would be converted into $66.50, each share of $3.65 cumulative preference stock would be converted into $42.50, and each share of $3.50 cumulative first preferred stock (the stock held by plaintiff and in issue here, hereinafter the "Preferred Stock") would be converted into

$40.00.[1] A series of $4.00 cumulative convertible first preferred stock was called for redemption according to its terms prior to the merger.

On February 27, 1986, plaintiff, a holder of 250 shares of Preferred Stock, commenced this diversity class action on behalf of a class consisting of the holders of Preferred Stock. It is undisputed that this action is governed by the law of Delaware, the state of incorporation of both RCA and Gesub. Plaintiff claimed that the merger constituted a "liquidation or dissolution or winding up of RCA and a redemption of the [Preferred Stock]," as a result of which holders of the Preferred Stock were entitled to $100 per share in accordance with the redemption provisions of RCA's certificate of incorporation,[2] that defendants were in violation of the rights of the holders of Preferred Stock as thus stated; and that defendants thereby wrongfully converted substantial sums of money to their own use. Plaintiff sought damages and injunctive relief.

Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), and plaintiff cross-moved for summary judgment. The district court concluded that the transaction at issue was a bona fide merger carried out in accordance with the relevant provisions of the Delaware General Corporation Law. Accordingly, the district court held that plaintiff's action was precluded by Delaware's doctrine of independent legal significance, and dismissed the complaint.

*Discussion*

At the outset, we note that in ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), a district court should deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote and citations omitted). The allegations in the complaint, moreover, must be liberally construed. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

■ According to RCA's Restated Certificate of Incorporation, the owners of the Preferred Stock were entitled to $100 per share, plus accrued dividends, upon the redemption of such stock at the election of the corporation. Plaintiff contends that the merger agreement, which compelled the holders of Preferred Stock to sell their shares to RCA for $40.00, effected a redemption whose nature is not changed by referring to it as a conversion of stock to cash pursuant to a merger. Plaintiff's argument, however, is not in accord with Delaware law.

It is clear that under the Delaware General Corporation Law, a conversion of shares to cash that is carried out in order to accomplish a merger is legally distinct from a redemption of shares by a corporation. Section 251 of the Delaware General Corporation Law allows two corporations

1. Section 1.6 of the Agreement of Merger provides in part:

As of the Effective Date, by virtue of the Merger and without any action on the part of the holders thereof ...
(e) Each other outstanding share of $3.50 Cumulative First Preferred Stock, without par value, of the Company (a "$3.50 Preferred Share"), except those held by stockholders who have validly perfected appraisal rights under the Delaware General Corporation Law, shall be converted into the right to receive $40.00 in cash, without interest. Notwithstanding the foregoing, if a class vote of the holders of the $3.50 Preferred Shares is required to effect the foregoing and such vote is not obtained, then each outstanding $3.50 Preferred Share shall remain outstanding and

represent one validly issued, fully paid and nonassessable $3.50 Preferred Share of the Surviving Corporation [RCA].

2. RCA's Restated Certificate of Incorporation, paragraph Fourth, Part I, provides in relevant part:

(c) The First Preferred Stock at any time outstanding *may be redeemed by the Corporation,* in whole or in part, *at its election,* expressed by resolution of the Board of Directors, at any time or times upon not less than sixty (60) days' previous notice to the holders of record of the First Preferred Stock to be redeemed, given as hereinafter provided, at the price of one hundred dollars ($100) per share and all dividends accrued or in arrears.... (emphasis added).

to merge into a single corporation by adoption of an agreement that complies with that section. Del.Code Ann. tit. viii, § 251(c) (1983). The merger agreement in issue called for the conversion of the shares of the constituent corporations into cash. The statute specifically authorizes such a transaction:

> The agreement shall state ... the manner of converting the shares of each of the constituent corporations into shares or other securities of the corporation surviving or resulting from the merger or consolidation and, if any shares of any of the constituent corporations are not to be converted solely into shares or other securities of the surviving or resulting corporations, *the cash ... which the holders of such shares are to receive* in exchange for, or upon conversion of such shares ..., *which cash ... may be* in addition to or *in lieu of shares* or other securities of the surviving or resulting corporation....

*Id.* § 251(b) (emphasis added). Thus, the RCA–GE merger agreement complied fully with the merger provision in question, and plaintiff does not argue to the contrary.

Redemption, on the other hand, is governed by sections 151(b) and 160(a) of the Delaware General Corporation Law. Section 151(b) provides that a corporation may subject its preferred stock to redemption "by the corporation at its option or at the option of the holders of such stock or upon the happening of a specified event." Del. Code Ann. tit. viii, § 151(b) (1983). In this instance, the Preferred Stock was subject to redemption by RCA *at its election. See supra* note 2. Nothing in RCA's certificate of incorporation indicated that the holders of Preferred Stock could initiate a redemption, nor was there provision for any specified event, such as the Gesub–RCA merger, to trigger a redemption.[3]

Plaintiff's contention that the transaction was essentially a redemption rather than a merger must therefore fail. RCA chose to convert its stock to cash to accomplish the desired merger, and in the process chose not to redeem the Preferred Stock. It had every right to do so in accordance with Delaware law. As the district court aptly noted, to accept plaintiff's argument "would render nugatory the conversion provisions within Section 251 of the Delaware Code."

Delaware courts have long held that such a result is unacceptable. Indeed, it is well settled under Delaware law that "action taken under one section of [the Delaware General Corporation Law] is legally independent, and its validity is not dependent upon, nor to be tested by the requirements of other unrelated sections under which the same final result might be attained by different means." *Rothschild Int'l Corp. v. Liggett Group,* 474 A.2d 133, 136 (Del.1984) (quoting *Orzeck v. Englehart,* 41 Del.Ch. 361, 365, 195 A.2d 375, 378 (Del.1963)). The rationale of the doctrine is that the various provisions of the Delaware General Corporation Law are of equal dignity, and a corporation may resort to one section thereof without having to answer for the consequences that would have arisen from invocation of a different section. *See Hariton v. Arco Electronics, Inc.,* 41 Del.Ch. 74, 77, 188 A.2d 123, 125 (Del.1963) (" 'the general theory of the Delaware Corporation Law [is] that action taken pursuant to the authority of the various sections of that law constitute acts of independent legal significance and their validity is not dependent on other sections of the Act' ") (quoting *Langfelder v. Universal Laboratories, Inc.,* 68 F.Supp. 209, 211 n. 5 (D.Del.1946), *aff'd,* 163 F.2d 804 (3d Cir.1947)).

---

**3.** Plaintiff points, however, to Del.Code Ann. tit. viii, § 251(e) (1983), which provides that "[i]n the case of a merger, the certificate of incorporation of the surviving corporation shall automatically be amended to the extent, if any, that changes in the amendment are set forth in the agreement of merger." Plaintiff contends that the agreement of merger "purports to alter or impair existing preferential rights," Brief for

Plaintiff–Appellant at 14, thus requiring a class vote under other provisions of Delaware law. There are a number of problems with this contention, but the decisive threshold difficulty is that no "existing preferential rights" are altered or impaired in any way, since the holders of Preferred Stock never had any right to initiate a redemption.

*Rothschild Int'l Corp. v. Liggett Group* is particularly instructive. In that case, certain preferred shareholders of Liggett were entitled to a $100 per share liquidation preference under Liggett's certificate of incorporation. Liggett, however, undertook a combined tender offer and reverse cash-out merger (similar to the instant transaction) whereby Liggett became a wholly owned subsidiary of Grand Metropolitan Ltd., and the preferred shareholders in question received $70 per share. *Id.,* 474 A.2d at 135–36. A preferred shareholder then brought a class action in which it claimed breach of contract and breach of fiduciary duty, asserting that the transaction was the equivalent of a liquidation of Liggett which entitled preferred shareholders to the $100 per share liquidation preference. The Delaware Supreme Court concluded, however, that "there was no 'liquidation' of Liggett within the well-defined meaning of that term" because "the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets." *Id.* at 136. Accordingly, the Court held that the doctrine of independent legal significance barred plaintiff's claim. *Id.*

In so holding, the Court stated that "[i]t is equally settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares." *Id.* at 136–37 (citing *Federal United Corp. v. Havender,* 24 Del.Ch. 318, 332–34, 11 A.2d 331, 338 (Del.1940)). Thus, the defendants were entitled to choose the most effective means to achieve the desired reorganization, "subject only to their duty to deal fairly with the minority interest." *Id.* at 136.

The instant action presents a most analogous situation. Plaintiff claims that the Gesub–RCA merger was, in effect, a redemption. However, there was no redemption within the well-defined meaning of that term under Delaware law, just as there had been no liquidation in *Liggett.* Thus, because the merger here was permitted by law, defendants legitimately chose to structure their transaction in the most effective way to achieve the desired corporate reorganization, and were subject only to a similar duty to deal fairly.

We note in this regard that plaintiff's complaint nowhere alleges that the $40.00 per share conversion rate for the Preferred Stock was unfair. Rather, "[p]laintiff is complaining of a breach of *contractual* rights, entirely divorced from the purported 'fairness' of the transaction." Brief for Plaintiff–Appellant at 23.[4] Moreover, as the district court stated: "Delaware provides specific protection to shareholders who believe that they have received insufficient value for their stock as the result of a merger: they may obtain an appraisal under § 262 of the General Corporation Law." Plaintiff, however, explicitly disavows any appraisal theory or remedy, consistent with her position that fairness is not the issue.

The doctrine of independent legal significance has been upheld by the Delaware courts in related corporate contexts, as well. *See, e.g., Field v. Allyn,* 457 A.2d 1089 (Del.Ch.), *aff'd mem.,* 467 A.2d 1274 (Del.1983) (tender offer followed by cash-out merger does not constitute "sale of assets" to which shareholder meeting provisions of Del.Gen.Corp. Law § 271 are applicable); *Orzeck v. Englehart,* 41 Del.Ch. 361, 195 A.2d 375 (Del.1963) (purchase by corporation with its stock of stock of seven other corporations, as a result of which selling stockholders acquire control of purchasing corporation, does not constitute de facto merger to which statutory appraisal rights apply); *Hariton v. Arco Electronics, Inc.,* 41 Del.Ch. 74, 188 A.2d 123 (Del. 1963) (sale of corporate assets for shares of stock of purchasing corporation, followed by distribution of those shares to share-

---

4. In view of this statement, we deem it irrelevant that the merger agreement provides for redemption of a series of $4.00 cumulative convertible first preferred stock, but not for redemption of plaintiff's Preferred Stock. Since the holders of Preferred Stock had no right to initiate a redemption, the only conceivable relevance of the redemption of another class of preferred stock would be to a fairness claim, which plaintiff has forsworn.

holders of, and dissolution of, selling corporation, does not constitute de facto merger to which statutory appraisal rights apply). Plaintiff's attempt to distinguish these cases on their facts is unavailing. While the details of the transactions may vary from case to case, the principle of the rule is clear and its application here cannot be seriously questioned.

Plaintiff. invokes *Sharon Steel Corp. v. Chase Manhattan Bank,* 691 F.2d 1039 (2d Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983), in which case we said:

> Where contractual language seems designed to protect the interests of both parties and where conflicting interpretations are argued, the contract should be construed to sacrifice the principal interests of each party as little as possible. An interpretation which sacrifices a major interest of one of the parties while furthering only a marginal interest of the other should be rejected in favor of an interpretation which sacrifices marginal interests of both parties in order to protect their major concerns.

*Id.* at 1051.

Plaintiff contends that this general principle should lead us to override the Delaware doctrine of independent legal significance and rule that the holders of Preferred Stock had a "major interest" in its redemption, whereas it was a matter of relatively less importance to defendants whether they redeemed or converted the Preferred Stock.

It is an adequate response to say that this contention has no basis in Delaware law, which we are bound to apply in this diversity litigation. The protection afforded by Delaware law is the "imperative duty to accord to the minority fair and equitable terms of conversion." *Sterling v. Mayflower Hotel Corp.,* 33 Del.Ch. 293, 303, 93 A.2d 107, 113 (Del.1952). Plaintiff makes no claim of unfairness, and no plausible argument that *Sharon Steel's* general statement concerning contract interpretation should prompt us to disregard a settled and controlling principle of Delaware corporate law.

*Conclusion*

The judgment of the district court dismissing the complaint is affirmed.